1  CROSNER LEGAL, P.C.
   Craig W. Straub (SBN 249032)
2  craig@crosnerlegal.com
   Michael T. Houchin (SBN 305541)
3  mhouchin@crosnerlegal.com
   9440 Santa Monica Blvd. Suite 301
4  Beverly Hills, CA 90210
   Tel: (866) 276-7637
5
6  *Attorneys for Plaintiff and the Proposed Class*

7

8                **UNITED STATES DISTRICT COURT FOR THE**

9                **NORTHERN DISTRICT OF CALIFORNIA**

10                          **OAKLAND DIVISION**

11 | ASHLEY WRIGHT, individually, and on | Case No.  4:24-cv-7991
   | behalf of all others similarly situated, |
12 |                                     | **CLASS ACTION COMPLAINT**
   |              Plaintiff,              |
13 |                                     |
   |                                     | DEMAND FOR JURY TRIAL
14 |                 v.                  |
15 | HORIZON ORGANIC DAIRY, LLC.,        |
16 |              Defendant.             |
17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Ashley Wright ("Plaintiff") individually, and on behalf of all others similarly situated, and the general public, by and through undersigned counsel, hereby brings this action against Horizon Organic Dairy, LLC. ("Defendant"), and upon information and belief and investigation of counsel, alleges as follows:

**INTRODUCTION**

1.      This is a consumer class action for violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and breach of express warranties.

2.      Defendant manufactures, distributes, advertises, and sells Horizon brand cheese products. The packaging prominently displays that these Products[1] contain "**NO ARTIFICIAL FLAVORS OR PRESERVATIVES**."



3.      This advertisement is false. Each of the Products are made with "citric acid" and "sodium citrate"—artificial preservatives used in food products.

4.      Defendant's packaging, labeling, and advertising scheme is intended to give consumers the reasonable belief that they are buying a premium product that is free from artificial ingredients.

5.      Like other reasonable consumers, Plaintiff was deceived by Defendant's unlawful conduct and brings this action individually and on behalf of consumers to remedy Defendant's unlawful acts.

---

[1] "Products" means all Horizon brand cheese products labeled as containing "No Artificial Flavors or Preservatives" that include citric acid and/or sodium citrate as an ingredient.

CROSNER LEGAL, P.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROSNER LEGAL, P.C.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

7.      The Products are sold at numerous retail stores and Plaintiff is seeking to represent a multi-state class. Thus, there are over 100 members in the proposed class and the proposed class has different citizenships from Defendant.

8.      Plaintiff seeks compensatory and statutory damages, disgorgement and restitution. Plaintiff also seeks punitive damages and attorneys' fees and costs. *See Montera v. Premier Nutrition Corp., No.* 16-CV-06980-RS, 2022 WL 10719057, at *3 (N.D. Cal. Oct. 18, 2022), *aff'd,* 111 F.4th 1018 (9th Cir. 2024) (noting lodestar after jury trial in consumer protection action was $6,806,031.96). Thus, Plaintiff estimates that the amount in controversy exceeds $5 million. T

9.      This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Products in California. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiff.

10.     The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold the alleged deceptively advertised Products to Plaintiff and members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally and expressly aimed conduct at

California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

11.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District since Plaintiff purchased the Products within this District.

### PARTIES

12.    Defendant is a Colorado company that maintains its principal place of business in Broomfield, Colorado. Defendant is known for its "organic" milk products and tout that it goes "the extra Mile" to ensure sustainable and truthful business practices.[2]

13.    Plaintiff Wright purchased Defendant's Organic American Cheese Singles Product in or around the summer of 2024 at a retail grocery store in Contra Costa County, California. She paid approximately $7 per Product. When purchasing the Product, Plaintiff Wright did not expect that the "No Artificial Flavors or Preservatives" statement on the label was false. Plaintiff Wright did not expect Defendant to publicly place deceptive statements about the contents of its Products prominently on the label of its Products.

14.    Plaintiff saw and relied on the "No Artificial Flavors or Preservatives" claim on the label of the Product when she purchased it. Plaintiff would not have purchased the Product, or would have paid less for the Product, had she known that the Product contains artificial ingredients in direct contradiction to the "No Artificial Flavors or Preservatives" statement on the label. As a result, Plaintiff suffered injury in fact when she spent money to purchase the Product she would not have purchased, or would have paid less for, absent Defendant's misconduct.

15.    Plaintiff desires to purchase the Products again if the label of the Products was accurate and if the Products truthfully contained "No Artificial Flavors or Preservatives."

---

[2] *See* https://horizon.com/organic-dairy-brand/sustainability/. However, in 2023, the Cornucopia Institute initiated investigations into allegations that Horizon farmers were utilizing "disturbing allegations of animal abuse." *See* https://www.cornucopia.org/2023/11/allegations-animal-abuse-horizon-dairy/

CROSNER LEGAL, P.C.

However, as a result of Defendant's ongoing misrepresentations, Plaintiff is unable to rely on the Products' labeling when deciding in the future whether to purchase the Products. Considering the fact that the Plaintiff continues to see the Products for sale, she is at an imminent risk of future injury.

<u>**FACTUAL ALLEGATIONS**</u>

**THE "NO ARTIFICIAL FLAVORS OR PRESERVATIVES" LABEL**

16.    The front labels for each of the Products prominently state that the Products contain "**NO ARTIFICIAL FLAVORS OR PRESERVATIVES**" thereby misleading reasonable consumers into believing that the Products are free from artificially created preservatives. The Products contain the artificial preservatives citric acid and sodium citrate. Below is an example of a label for of the Products:





CROSNER LEGAL, P.C.

---

4

CLASS ACTION COMPLAINT

17.    On the back of the label, the ingredients list which is in small print states that the Products contain two artificial preservative ingredients: citric acid and sodium citrate:



**THE CITRIC ACID IN THE PRODUCTS IS AN ARTIFICIAL PRESERVATIVE**

18.    Defendant uses artificial manufactured citric acid in the Products.[3] Commercial food manufactures use a synthetic form of citric acid that is derived from heavy chemical processing.[4] Commercially produced citric acid is manufactured using a type of black mold called *Aspergillus niger* which is modified to increase citric acid production.[5] Consumption of

---

[3] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* Toxicol Rep. 5:808-812 (2018).

[4] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 Mycobiology 122, 123 (2020).

[5] *Id*; Pau Loke Show, *et al*., *Overview of citric acid production from Aspergillus niger,* Frontiers in Life Science, 8:3, 271-283 (2015).

manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[6] Defendant does not use natural citric acid extracted from fruit in the Products. This is because "[a]proximately 99% of the world's production of [citric acid] is carried out using the fungus *Aspergillus niger* since 1919." [7] As explained by a study published in the *Toxicology Reports Journal*:

> Citric acid naturally exists in fruits and vegetables. However, **it is *not* the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food and beverage additive**. Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919. *Aspergilus niger* is a known allergen.[8]

19.    As a technical evaluation report for citric acid, compiled by the United States Department of Agriculture Marketing Servies ("USDA AMS") further explains that it is not commercially feasible to use natural citric acid extracted from fruits:

> "Traditionally by extraction from citrus juice, [is] no longer commercially available. It is now extracted by fermentation of a carbohydrate substance (often molasses) by citric acid bacteria, *Aspergillus niger* (a mold) or *Candida guilliermondii* (a yeast). Citric acid is recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then reacidulated with sulfuric acid."[9]

20.    As one of the USDA AMS reviewers commented:

> "[Citric acid] is a natural[ly] occurring substance that commercially goes through numerous chemical processes to get to [its] final usable form. This processing would suggest that it be ***classified as synthetic***."[10]

---

[6] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* Toxicol Rep. 5:808-812 (2018).

[7] *Id*.

[8] *Id*. (emphasis added)

[9] **Exhibit D** at page 6.

[10] **Exhibit D** at page 5 (emphasis added)

CROSNER LEGAL, P.C.

21.    When asked "Is this substance Natural of Synthetic?" USDA AMS reviewers state: "synthetic."[11]

22.    The FDA has determined that manufactured citric acid is not natural; it is artificial. The FDA sent warning letters to Hirzel Canning Company and Oak Tree Farm Dairy, Inc., for similar violations, saying that the FDA's policy involving the use of the word natural means that nothing artificial or synthetic has been added to the product, and that a product that labels itself "100% Natural" or "All Natural" violates that policy if it contains citric acid, and that the presence of citric acid precludes the use of the term natural to describe the product.[12]

23.    The FDA explains that the "Solvent extraction process for citric acid" is accomplished via "recovery of citric acid from conventional *Aspergillus niger* fermentation liquor may be safely used to produce food-grade citric acid in accordance with the following conditions: (a) The solvent used in the process consists of a mixture of *n-* octyl alcohol meeting the requirements of § 172.864 of this chapter, **synthetic** isoparaffinic petroleum hydrocarbons meeting the requirements of § 172.882 of this chapter, and tridodecyl amine. 12 C.F.R. § 173.280 (emphasis added). Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Products from *aspergillus niger* fermentation liquor. *See* 21 C.F.R § 173.280. The citric acid that Defendant uses in the Products is produced through chemical solvent extraction and contains residues of those chemical solvents.

24.    The *Toxicology Reports Journal* study explains that "the potential presence of impurities or fragments from the *Aspergillus niger* in [manufactured citric acid] is a significant difference that may trigger deleterious effects when ingested."[13] The study further explains:

> "Given the thermotolerance of A. niger, there is great potential that byproducts of
> A. niger remain in the final [manufactured citric acid] product. Furthermore, given

---

[11] **Exhibit D** at pages 4-5.

[12] *See* **Exhibit B** at page 2 and **Exhibit C** at page 2.

[13] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* Toxicol Rep. 5:808-812 (2018).

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

the pro-inflammatory nature of A. niger even when heat-killed, repetitive ingestion of [manufactured citric acid] may trigger sensitivity or allergic reactions in susceptible individuals. Over the last two decades, there has been a significant rise in the incidence of food allergies"[14]

25.    The EPA provides the following simply schematic of the manufacturing process for citric acid which includes the use of synthetic solvents like Sulfuric Acid:[15]



26.    Dr. Ryan Monahan, a prominent functional medicine practitioner, notes that the "[p]resent day process of creating manufactured citric acid involves feeding sugars derived from GMO corn to black mold, which then ferments to form manufactured citric acid."[16] This is the reason why Defendant's indicate in tiny print on the back of the packing that the citric acid ingredient in the Products is a "bioengineered food ingredient[]" which is manufactured from "genetically modified crops." *See supra* at ¶ 21.

27.    Dr. Monahan also notes that "*Aspergillus niger* is associated with systemic inflammatory issues, including respiratory, gastrointestinal, neurological and musculoskeletal. Due to the potential for fragments of *Aspergillus niger* to make their way into the finished product of manufactured citric acid, this toxic inflammatory substance is likely being ingested

---

[14] *Id.*

[15] https://www.epa.gov/system/files/documents/2023-03/Citric%20Acid%20Supply%20Chain%20Profile.pdf.

[16] Dr. Ryan Monahan, *Citric Acid: A Common Food Additive With An Uncommon Source* (2024) available at https://www.peacefulmountainmedicine.com/post/citric-acid-a-common-food-additive-with-an-uncommon-source (Last visited May 15, 2024).

by consumers of products containing citric acid. Even with high-heat processing to kill it, research has shown *Aspergillus niger* can still elicit an inflammatory response."[17]

28.    Clinical nutritionist Serge Gregoire, notes that [f]ood manufacturers leave out that citric acid is derived from genetically modified black mold grown on GMO corn syrup" and that "[c]ompanies continuously capitalize on an ignorance-based market."[18] Gregoire states, "Citric acid production has become a refined and highly prized industrial process." Gregoire note that the *Aspergillus niger* used to produce citric acid is engineered to increase production of citric acid which has "resulted in countless generations of genetically modified mutant variants, now specialized for industrial-scale economics."

29.    "Further genetic modification in the lab has taken place through the engineering of the glycolytic pathway, resulting in a metabolic-streamlining that facilitates greater citric acid production from sugar while shutting off side avenues of glycolysis."[19]

30.    "Mutagenesis has been used in recent years to improve the citric-acid producing strains so that they can be used in industrial applications. The most common methods include the use of mutagens to induce mutations on the parental strains. The mutagens utilized for improvements are gamma radiation, ultraviolet radiation and often chemical mutagens. For hyperproducer strains, a hybrid method that combines ultraviolet and chemical mutagens is used (Ratledge & Kristiansen Citation2001)."[20]

---

[17] Dr. Ryan Monahan, *Citric Acid: A Common Food Additive With An Uncommon Source* (2024) *available at* https://www.peacefulmountainmedicine.com/post/citric-acid-a-common-food-additive-with-an-uncommon-source.

[18] Serge Gregoire, Avoid citric acid: a mold byproduct! (July 13, 2021) *available at* https://www.linkedin.com/pulse/avoid-citric-acid-mold-byproduct-serge-gregoire/

[19] *Id.*

[20] Show, P. L., Oladele, K. O., Siew, Q. Y., Aziz Zakry, F. A., Lan, J. C. W., & Ling, T. C. (2015). Overview of citric acid production from Aspergillus niger. Frontiers in Life Science, 8(3), 271–283.

CROSNER LEGAL, P.C.

31.    Below is a schematic representation of the metabolic reactions involved in citric acid production, the enzymes (italics), the known feedback loops (dashed lines) and their locations within the cellular structure of *Aspergillus niger*:[21]



32.    Dictionary definitions define "artificial" as something made by man. For example, "artificial" is defined as "made by human skill; produced by humans …"[22] Merriam-Webster's online dictionary states that "artificial" means "humanly contrived …"[23] Cambridge

CROSNER LEGAL, P.C.

---

[21] *Id.* at Figure 3.

[22] *Artificial,* DICTIONARY.COM, *available at* https://www.dictionary.com/browse/artificial

[23] *Artificial*, MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/artificial

Dictionary states that "artificial" means "made by people, often as a copy of something natural."[24]

33.    Below are images of the chemical process used to create citric acid for use in food – a process that is visibly artificial:





34.    Citric acid acts as an artificial preservative when added to food products, including the Products at issue. The Food and Drug Administration ("FDA") defines a preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for

---

[24] *Artificial*, CAMBRIDGE DICTIONARY, *available at* https://dictionary.cambridge.org/us/dictionary/english/artificial

CROSNER LEGAL, P.C.

their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5). The FDA has listed citric acid as a preservative in its "Overview of Food Ingredients, Additives and Colors" as shown below:[25]

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

35.    In a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc., the FDA warned that certain products were misbranded under the Federal Food Drug and Cosmetics Act because they "contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[26]

36.    The Encyclopedia Britanica also classifies citric acid as a preservative because it has antioxidant properties, as shown below[27]:

---

[25] *Overview of Food Ingredients, Additives & Colors,* FOOD AND DRUG ADMINISTRATION, *available at* https://web.archive.org/web/20220901032454/http://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors

[26] *See* **Exhibit A** at page 2 (highlighted).

[27] *Preservatives,* BRITANICA, *available at* https://www.britannica.com/topic/food-additive/Preservatives#ref502211

CROSNER LEGAL, P.C.

## Preservatives

Food preservatives are classified into two main groups: antioxidants and antimicrobials. Antioxidants are compounds that delay or prevent the deterioration of foods by oxidative mechanisms. Antimicrobial agents inhibit the growth of spoilage and pathogenic microorganisms in food.

| Food preservatives | |
| --- | --- |
| chemical agent | mechanism of action |
| **Antioxidants** | |
| ascorbic acid | oxygen scavenger |
| butylated hydroxyanisole (BHA) | free radical scavenger |
| butylated hydroxytoluene (BHT) | free radical scavenger |
| citric acid | enzyme inhibitor/metal chelator |
| sulfites | enzyme inhibitor/oxygen scavenger |
| tertiary butylhydroquinone (TBHQ) | free radical scavenger |
| tocopherols | free radical scavenger |

37.     The Agricultural Marketing Service of the United States Department of Agriculture ("USDA") has also recognized the use of citric acid as a preservative stating that "Citric acid has a wide variety of uses, some of which can provide preservative functions, primarily though lowering the pH of the food."[28]

38.     The USDA's Food Safety Inspection Service's "Guideline for Label Approval" states that "common **chemical** preservatives include BHA, BHT, calcium propionate, citric acid, natamycin and sodium propionate."[29]

39.     Several academic journals also note the use of citric acid as a preservative.[30] Indeed, "Citric acid acts as a preservative in many processed foods, keeping them fresh. It does

---

[28] *Citric Acid and Salts*, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf.

[29] FSIS Guideline for Label Approval, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf (emphasis added)

[30] K. Kirimura, et al., *Citric Acid*, COMPREHENSIVE BIOTECHNOLOGY (SECOND EDITION) (2011), *available at* https://www.sciencedirect.com/science/article/abs/pii/B9780080885049001690?via%3Dihub;

13

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

this by slowing or helping prevent the formation of bacteria, mold, yeast, and fungus."[31] "Today, citric acid is one of the most common and widely-used preservatives in the world[.]"[32]

40.    Citric acid functions as a preservative in the Products regardless of whether Defendants intended to use citric acid as a preservative. Citric acid functions as a preservative even if it is also added to the Products for some other use. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends to* prevent or retard deterioration") (emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or *has the power of preserving*.") (emphasis added).[33]

41.    Citric acid acts as a preservative even when present at low levels. It will delay bacterial spoilage, delay changes in color, flavor, and texture of the product. Citric Acid acts to preserve the Products throughout the shelf-life of the Products. Because citric acid lowers the pH of the Products, it functions as a preservative by preventing or significantly delaying microorganisms such as mold, bacteria, fungi, and yeast from developing in the Products. Citric acid's antioxidant properties also assist in preservation by sequestering unwanted compounds like metal ions from the Products.[34] A basic principle of food preservation is to impose numerous

K.M.S. Islam, *Use of citric acid in broiler diets,* World's Poultry Science Journal Vol. 68, Issue 1 (Feb. 21, 2012), *available at* https://www.cambridge.org/core/journals/world-s-poultry-science-journal/article/abs/use-of-citric-acid-in-broiler-diets/DA15C2C1F90667525BF2414DF3BFF646 ("Citric Acid (CA) is a weak organic acid which is a natural preservative and can add an acidic or sour taste to foods and soft drinks.").

[31] *What is citric acid, and what is it used for?,* MEDICAL NEWS TODAY (July 23, 2021), *available at* https://www.medicalnewstoday.com/articles/citric-acid

[32] *Citric Acid: One of the Most Important Preservatives in The World,* FBC INDUSTRIES, INC. (Feb. 5, 2019), *available at* https://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/

[33] *Preservative,* MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld

[34] B.C. Behera, et al. *Microbial citric acid: Production, properties, application, and future perspectives,* Food Frontiers Vol. 2, 62-76 (Jan. 7, 2021), *available at* https://onlinelibrary.wiley.com/doi/pdf/10.1002/fft2.66

"hurdles" to prevent and delay degradation of the food product.[35] Here, the citric acid in the Products does just that—it acts as a hurdle to unwanted spoilation of the Products.

42.    Citric acid is also a preservative because it is a sequestrant that prevents oxidation and impedes microbial growth which slows degradation of the potato chips. Indeed, patents have been issued regarding preserving potatoes and include citric acid as a preservative ingredient. *See e.g.*, Thane R. Siddoway et al. (Jan. 8, 2015) US 2015/0010691 A1. Washington, DC. U.S. Patent and Trademark Office.

### THE SODIUM CITRATE IN THE PRODUCTS IS AN ARTIFICIAL PRESERVATIVE

43.    Sodium citrate is the sodium salt of citric acid. 21 C.F.R. § 184.1751.  It is prepared by neutralizing citric acid with sodium hydroxide or sodium carbonate. *Id.* The product occurs as colorless crystals or a white crystalline powder. *Id.* It may be prepared in an anhydrous state or may contain two moles of water per mole of sodium citrate. *Id.*

44.    Sodium citrate in the Products is artificial. Experts at Food Additives inform that commercial sodium citrate "is synthetic."[36]

45.    Sodium citrate is chemically produced by using the same process as citric acid as described above.[37] It is used to control pH and stabilize food products which are preservative properties.[38] The U.S. Department of Agriculture, Agricultural Marketing Service, clearly states: "Sodium citrate is synthetic."[39]

---

[35] L. Leistner, *Basic aspects of food preservation by hurdle technology*, INTERNATIONAL JOURNAL OF FOOD MICROBIOLOGY, VOL. 55, 181-186 (2000), *available at* http://envismadrasuniv.org/Physiology/pdf/Basic%20aspects%20of%20food%20preservation.pdf

[36] https://foodadditives.net/acidity-regulator/sodium-citrate/#:~:text=Is%20it%20natural%3F,naturally%20found%20in%20citrus%20fruits.

[37] U.S. Department of Agriculture, Agricultural Marketing Service, *Technical Report Sodium Citrate* (Dec. 18, 2027) available at https://www.ams.usda.gov/sites/default/files/media/SodiumCitrateCropsTR20171218.pdf

[38] *Id.*

[39] *Id.* at p. 5.

---

15

46.      The National Organics Standards Board (NOSB) has "determined sodium citrate to be synthetic."[40] For this reason, 7 C.F.R. §205.605(b)(31) lists sodium citrate as a "***Synthetic***" substance.

47.      Industry experts at Bell Chem[41] state: "In the dairy industry in particular and other industries overall, sodium citrate acts as a chelating agent, stimulating antioxidant function to deter spoilage of products."[42] As noted above, ingredients with antioxidant properties are preservations since they sequester unwanted compounds like metal ions from the Products.[43]

48.      Industry experts at SpecialChem[44] explain that "Sodium citrate serves as a preservative to ensure safe and durable products by inhibiting microbial growth."[45]

CROSNER LEGAL, P.C.

---

[40] U.S> Department of Agriculture, National Organics Standards Board, National Organic Program, *Sodium Citrate – petitioned*, (Cot. 26, 2018) available at https://www.ams.usda.gov/sites/default/files/media/CSSodiumCitratePetRecOct2018.pdf

[41] Bell Chem is a food ingredient supplier based in Longwood, FL (just north of Orlando) with hundreds of products stocked in their 50,000+ square-foot warehouse, including sodium citrate. *See* https://www.bellchem.com/news/ndrdko4ffkathoxrz8s7u4z6kxw8dt

[42] https://www.bellchem.com/news/ndrdko4ffkathoxrz8s7u4z6kxw8dt

[43] B.C. Behera, et al. *Microbial citric acid: Production, properties, application, and future perspectives*, FOOD FRONTIERS VOL. 2, 62-76 (Jan. 7, 2021), *available at* https://onlinelibrary.wiley.com/doi/pdf/10.1002/fft2.66

[44] SpecialChem maintains "world's largest materials catalog." https://www.specialchem.com/why-specialchem

[45]https://cosmetics.specialchem.com/inci-ingredients/sodium-citrate#:~:text=What%20is%20SODIUM%20CITRATE%20used,of%20about%203%20to%206.2.

49.     Industry experts at Level 7 Chemical & Supply[46] state that sodium citrate is "used as a preservative to extend the shelf life of certain foods by preventing spoilage and microbial growth."[47]

50.     Published and peer-reviewed literature states that sodium citrate (also known as trisodium citrate) is an effective calcium chelating agent (e.g., a preservative) because it disrupts casein micelles.[48] Chelating agents, like the sodium citrate in the Products, are preservatives since they inhibit oxidation and "bind metal ions within foods to prevent decay."[49]

**REASONABLE CONSUMERS ARE DECEIVED AND SUFFERED ECONOMIC INJURY**

51.     Consumers, like Plaintiff, relied on Defendant's "No Artificial Flavors or Preservatives" labeling statement. The "No Artificial Flavors or Preservatives" statement on the labels of the Products is material to reasonable consumers.

52.     "[F]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[50]

[46] "Level 7 Chemical is a trusted and reliable source for Sodium Citrate, offering high-quality products that meet rigorous industry standards. With a commitment to purity, consistency, and customer satisfaction, Level 7 Chemical is an excellent choice for businesses seeking a dependable source of Sodium Citrate for various applications in the food, laboratory, and industrial sectors." https://level7chemical.com/blog/sodium-citrate-revealing-its-versatile-applications-in-food-science-and-industry/

[47] https://level7chemical.com/blog/sodium-citrate-revealing-its-versatile-applications-in-food-science-and-industry/

[48] N. Shirashoji, J.J. Jaeggi, J.A. Lucey, Effect of Trisodium Citrate Concentration and Cooking Time on the Physicochemical Properties of Pasteurized Process Cheese, Journal of Dairy Science, Volume 89, Issue 1, 2006, Pages 15-28, ISSN 0022-0302.

[49] https://fbcindustries.com/understanding-the-basic-types-of-food-additives-and-preservatives/

[50] *84% of Americans buy "free-from" foods because they believe them to be more natural or less processed*, MINTEL (Sept. 3, 2015), *available at* https://www.mintel.com/press-centre/84-

53.     Plaintiff and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent.

54.     Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Products and/or the price premium associated with the deceptive statements on the Products. Consumers, including Plaintiff, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products contain artificial preservative ingredients indirect contradiction to the label.

### NO ADEQUATE REMEDY AT LAW

55.     Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

56.     The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products.

57.     A primary litigation objective in this litigation is to obtain injunctive relief in the form of a label or ingredient change. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to misrepresent the Products as containing "No Artificial Flavors or Preservatives" when the Products actually contain artificial preservative ingredients. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary

of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed/

damages to compensate past harm). Further, public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

<b><small>C</small>LASS <small>A</small>CTION <small>A</small>LLEGATIONS</b>

58.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Classes:

**The California Class**
All persons in California who purchased the Products for personal use until the date class notice is disseminated.

**The Multi-State Breach of Warranty Class**
All persons who purchased the Products for personal use in states with express warranty laws that are substantially similar to California law[51] within the applicable statute of limitations until the date class notice is disseminated.

(collectively, referred to as the "Class")

59.     Excluded from the Class are: (i) Defendant and their officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

60.     Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

61.     The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

---

[51] Plaintiff preliminarily asserts the following states have express warranty laws that are substantially similar to California's breach of express warranty law: Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, or Wyoming.

CROSNER LEGAL, P.C.

62.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

63.    <u>Commonality</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.  Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.  Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c.  Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d.  Whether Plaintiff and the Class are entitled to injunctive relief;

e.  Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

64.    <u>Typicality</u>: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

65.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel.

Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

66.    The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.   The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.   The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.   When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.   This class action will assure uniformity of decisions among Class Members;

g.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

67.    Additionally, or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

CROSNER LEGAL, P.C.

68.     Plaintiff seeks preliminary and/or permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide restitution to Plaintiff and the Class members.

69.     Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## FIRST CLAIM FOR RELIEF

**Violation of California's Consumers Legal Remedies Act ("CLRA")**

**Cal. Civ. Code §§ 1750, *et seq*.**

70.     Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

71.     Plaintiff brings this claim under the CLRA individually and on behalf of the California Class against Defendant.

72.     At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

73.     At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

74.     At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

75.     The purchases of the Products by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

76.     Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that the Products contain "No Artificial Flavors or Preservatives." Defendant failed to disclose that the Products contain artificial preservatives. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Products contain an artificial preservative to be important

22

CROSNER LEGAL, P.C.

to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

    a.  Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

    b.  Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

    c.  Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

    d.  Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

77.    Defendant violated the CLRA because the Products were prominently advertised as containing "No Artificial Flavors or Preservatives" but the Products contain artificial preservatives. Defendant knew or should have known that consumers would want to know that the Products contain an artificial preservative.

78.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

79.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

80.    Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

81.    Pursuant to California Civil Code section 1782, Plaintiff will notify Defendant in writing by certified mail of the alleged violations of the CLRA and will demand that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30

CROSNER LEGAL, P.C.

1    days of the date of written notice pursuant to section 1782 of the CLRA, then Plaintiff will

2    amend the complaint to seek damages.

3         82.    Pursuant to section 1780(d) of the CLRA, below is an affidavit showing that this

4    action was commenced in a proper forum.

5                          **SECOND CLAIM FOR RELIEF**

6         **Violation of California's Unfair Competition Law ("UCL")**

7              **Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

8         83.    Plaintiff realleges and incorporates by reference all allegations contained in this

9    complaint, as though fully set forth herein.

10        84.    Plaintiff brings this claim under the UCL individually and on behalf of the

11   California Class against Defendant.

12        85.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or

13   practice and any false or misleading advertising.

14        86.    Defendant committed unlawful business acts or practices by making the

15   representations and omitted material facts (which constitutes advertising within the meaning of

16   California Business & Professions Code section 17200), as set forth more fully herein, and by

17   violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*,

18   California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45

19   (prohibiting deceptive practices affecting commerce), 21 U.S.C. § 343(a) (prohibiting false or

20   misleading advertising of food products) and by breaching express and implied warranties.

21        87.    Plaintiff, individually and on behalf of the other Class members, reserves the

22   right to allege other violations of law, which constitute other unlawful business acts or practices.

23   Such conduct is ongoing and continues to this date.

24        88.    Defendant committed "unfair" business acts or practices by: (1) engaging in

25   conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members

26   of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or

27   substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct

28   that undermines or violates the intent of the consumer protection laws alleged herein. There is

CROSNER LEGAL, P.C.

no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Products contain an artificial preservative) of which they had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendant were unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

89.     Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products actually contain no artificial flavors or preservatives.

90.     Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

91.     Defendant's wrongful business practices and violations of the UCL are ongoing.

92.     Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

93.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seeks (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief

this Court deems appropriate, consistent with California Business & Professions Code section 17203.

### THIRD CLAIM FOR RELIEF

### Breach of Express Warranty

94.     Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

95.     Plaintiff brings this claim for breach of express warranty individually and on behalf of the Multi-State Class against Defendant.

96.     As the manufacturer, marketer, distributor, and seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products contain "No Artificial Flavors or Preservatives."

97.     Plaintiff and the Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Products, including the representation that the Products contain "No Artificial Flavors or Preservatives."

98.     Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class.

99.     In fact, the Products do not conform to Defendant's representations because the Products contain artificial preservative ingredients citric acid and sodium citrate. By falsely representing the Products in this way, Defendant breached express warranties.

100.    Plaintiff relied on Defendant's (the manufacturers) representations on the Products' labels and advertising materials which provide the basis for an express warranty under California law.

101.    All conditions precedent to Defendant's liability under the above- referenced contract have been performed by Plaintiff and the other Multi-State Class members. Defendant breached its express warranties about the Products because, as alleged above, the Products are not free from "artificial preservatives." Defendant violated the following state warranty laws which are substantially similar to California express warranty law: Alaska Stat. section 45.02.313; A.R.S. section 47-2313; A.C.A. section 4-2-313; Cal. Com. Code section 2313; Colo.

CROSNER LEGAL, P.C.

Rev. Stat. section 4-2-313; Conn. Gen. Stat. section 42a-2-313; 6 Del. C. section 2-313; D.C. Code section 28:2-313; O.C.G.A. section 11-2-313; HRS section 490:2-313; Idaho Code section 28-2-313; 810 ILCS 5/2-313; Ind. Code section 26-1-2-313; K.S.A. section 84-2-313; KRS section 355.2-313; 11 M.R.S. section 2-313; Mass. Gen. Laws Ann. ch. 106 section 2-313; Minn. Stat. section 336.2-313; Miss. Code Ann. section 75-2-313; R.S. Mo. Section 400.2-313; Mont. Code Anno. Section 30-2-313; Neb. Rev. Stat. section 2-313; Nev. Rev. Stat. Ann. section 104.2313; RSA 382-A:2-313; N.J. Stat. Ann. section 12A:2-313; N.M. Stat. Ann. section 55-2-313; N.Y. U.C.C. Law section 2-313; N.C. Gen. Stat. section 25-2-313; N.D. Cent. Code section 41-02-30; ORC Ann. section 1302.26; 12A Okl. St. section 2-313; Or. Rev. Stat. section 72-3130; 13 Pa.C.S. section 2313; R.I. Gen. Laws section 6A-2-313; S.C. Code Ann. section 36-2-313; S.D. Codified Laws, section 57A-2-313; Tenn. Code Ann. section 47-2-313; Tex. Bus. & Com. Code section 2.313; Utah Code Ann. section 70A-2-313; 9A V.S.A. section 2-313; Va. Code Ann. section 59.1-504.2; Wash. Rev. Code Ann. section 62A.2-313; W. Va. Code section 46-2-313; and Wyo. Stat. section 34.1-2-313.

102.    As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class were injured because they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the characteristics of the Products were truthful.

103.    Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class Members would not have purchased the Products or would not have paid as much as they did for them.

<u>**REQUEST FOR RELIEF**</u>

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim as follows:

104.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

CROSNER LEGAL, P.C.

27

105.    Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

106.    Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

107.    Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

108.    Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

109.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

110.    Ordering other relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint.

Dated: November 14, 2024                CROSNER LEGAL, P.C.


By:      */s/ Craig W. Straub*
                CRAIG W. STRAUB

Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

Civil Code Section 1780(d) Affidavit

I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff. This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act. Defendant has done, and are doing, business in California, including in this district. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed November 14, 2024 at San Diego, California.

By:        /s/ Craig W. Straub

CLASS ACTION COMPLAINT